# Third District Court of Appeal

## State of Florida

Opinion filed July 13, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-2322
Lower Tribunal No. F06-37622E
_____

**Jose Estache,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Jeffrey H. Fink, for appellant.

Ashley Moody, Attorney General, and Christina L. Dominguez and Ivy R. Ginsberg, Assistant Attorneys General, for appellee.

Before LOGUE, SCALES, and LINDSEY, JJ.

LINDSEY, J.

Appellant Jose Estache (Defendant below) appeals a final judgment of conviction and sentence. For the reasons set forth below, we reverse and remand for the trial court to vacate the convictions for attempted home invasion robbery (count 12) and unlawful possession of a firearm (count 15). We affirm all other issues on appeal.

## I. BACKGROUND

On October 14, 2006, Ann Maynard was preparing to host a children's birthday party for her cousin Carla Queely's son and her friend Sophia Alexis's son. According to Ms. Maynard's testimony, two unknown men came to her front door. She testified that both men were black and described one as "a tall, light-skinned man" and the other as "shorter and darker." The taller man, who was holding a pistol, ordered Ms. Maynard, Ms. Queely, and Ms. Queely's son to get down on the ground. The taller man repeatedly asked if there was a safe in the house. Ms. Maynard answered that there was no safe. The taller man then put a silencer on his pistol and told the victims to stop crying and to be quiet because he would have no problem killing them. Once the victims were on the ground, the taller man handed the shorter man plastic zip ties to put on the victims' hands.

At this point, Ms. Maynard heard her sister and her sister's two children at the front door. Ms. Maynard pushed the taller man aside as he was

opening the door and yelled to her sister and the two children to run. The taller man shot Ms. Maynard in the face and in her hands. He also shot Ms. Maynard's sister and the two children. All four survived. Moments later, after the two men fled, Ms. Queely and her son, who had remained in the house, were found dead. They had been shot by the shorter man.

Ms. Maynard testified that she got a good look at the taller man. She identified him from a photographic lineup and stated she was "very certain" because "that's the face I will never forget in my life." While on the stand, Ms. Maynard identified Jose Estache as the taller man, the same man she had identified from the photographic lineup.

In October 2006, Estache, who was living in Broward County, was wearing a GPS ankle bracelet as a condition of pretrial release in an unrelated criminal case. His ankle bracelet automatically recorded GPS location data every minute and reported the GPS data points to a database every hour. On October 14, 2006, at the time the crimes were committed, the GPS data showed locations at or near Ms. Maynard's home.[1]

Based on Ms. Maynard's photographic lineup identifications, an arrest warrant was issued for Estache. Police applied for and received a court

---

[1] The State's expert testified that in 2006, 90% of all GPS data points collected by the ankle monitor were accurate to within 30 feet.

order for a pen register and a trap and trace on Estache's cell phone.[2] Police eventually located Estache and arrested him. At the police station, Detective Raymond Hoadley conducted an unrecorded interview.[3] Detective Hoadley testified that he advised Estache of his <u>Miranda</u> rights using a pre-printed form.

To make sure Estache understood his <u>Miranda</u> rights, Detective Hoadley asked Estache about his level of education and his ability to understand English. Estache answered that he was a high school graduate and had the equivalent of some college education in Jamaica, where he was

---

[2] A pen register "records or decodes dialing, routing, addressing, or signaling information . . . but such information does not include the contents of any communication." § 934.02(20), Fla. Stat. (2021). A trap and trace "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but such information does not include the contents of any communication." § 934.02(21), Fla. Stat. (2021).

[3] Before Estache was taken to the police station for questioning, he made incriminating statements to the arresting detective. Estache argues the trial court erred when it did not suppress these statements because he was arrested as a result of illegal cell phone tracking that went beyond the scope of the pen register and trap and trace order. To the extent this is true, any error was harmless because police had probable cause to arrest Estache, and he made similar incriminating statements at the police station once he had been given a <u>Miranda</u> warning. <u>Cf.</u> <u>New York v. Harris</u>, 495 U.S. 14, 14 (1990) ("Where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home . . . .").

4

raised.  Estache also told Detective Hoadley that English was his primary language.  When asked about his mental state, Estache answered that he was possibly schizophrenic.  During questioning, Detective Hoadley did not notice anything delusional in any of Estache's statements.  "He would answer questions that he wanted to answer and not answer questions he didn't want to."  Detective Hoadley further testified that Estache "appeared normal in all matter.  He was -- he was consistently talking to me. He engaged me.  He would ask me some questions. . . . There was no indication that he had anything less than a normal ability."

After Detective Hoadley informed Estache of his <u>Miranda</u> rights and Estache signed the pre-printed <u>Miranda</u> form, Estache agreed to answer some questions.[4]  Detective Hoaldey testified, in relevant part, as follows:

> [STATE:] Did he say anything about who was the leader of the group of people who went into the house?
>
> . . . .

---

[4] Estache argues the incriminating statements he made to Detective Hoadley should have been suppressed because his mental illness prevented him from knowingly and intelligently waiving his <u>Miranda</u> rights.  Based on the record before us, we cannot conclude that the trial court's failure to suppress these incriminating statements was clearly erroneous.  <u>See</u> <u>Wright v. State</u>, 300 So. 3d 296, 300 (Fla. 3d DCA 2020), <u>reh'g denied</u>, 302 So. 3d 383 (Fla. 3d DCA 2020), <u>review denied</u>, SC20-386, 2020 WL 2316638 (Fla. May 11, 2020) ("[A] trial court's ruling on the voluntariness of a confession will not be overturned unless clearly erroneous.").

5

[DETECTIVE HOALDEY:] He stated he could understand why the surviving victims would have considered him the leader; however, that [a co-defendant] had also spoken to the victims inside the house as well.

. . . .

Q. Did you ask him about or did you discuss with him the fact that there was a police officer in the area —[5]

A. Yes.

Q. -- at the time of the incident? What was the discussion with him about police being in the area?

A. Initially, he said he thought that was why the shooting had started, that when the officer arrived on the scene.

Q. Did you talk to him about shooting the police officer?

. . . .

A. I asked him, Did you run out of bullets when you were shooting the people in the front yard?

And he said, No. He said, shooting at a police officer isn't like shooting at dopers or their children.

He said he had plenty of bullets and an extra gun if he needed it.

---

[5] Shortly before the crimes occurred, Officer Carson was returning home after work. He noticed two unknown men walking towards Ms. Maynard's house. He circled around and remained in the area. He heard the gunshots, and due to his proximity, he was able to arrive at the scene within moments.

On October 4, 2018, the jury found Estache guilty of first-degree murder (Counts 1–2), attempted first-degree murder with a firearm (Counts 3–6), attempted first-degree felony murder while using a firearm (Counts 7–10), burglary with assault (Count 11), home invasion robbery (Count 12), attempted armed robbery (Count 13), and unlawful possession of a firearm while engaged in a criminal offense (Count 14). The jury found that Estache discharged a firearm causing great bodily harm for counts 11 through 13. Counts 3–6 were later vacated by the trial court.

Estache timely appealed.

## II. ANALYSIS

Estache raises numerous issues on appeal, many of which challenge the trial court's discretion with respect to various evidentiary issues. We write solely to address Estache's argument that the judgment violated double jeopardy. We affirm the remaining issues on appeal.

Given the record before us and the evidence at trial, which included Ms. Maynard's identification of Estache, the GPS data placing Estache at the crime scene during the time the crimes were committed, and Estache's incriminating statements to Detective Hoadley, to the extent the trial court erred, any error would be harmless. See Wright v. State, 317 So. 3d 237, 241 (Fla. 3d DCA 2021), review denied, SC21-1076, 2021 WL 5275705 (Fla.

7

Nov. 12, 2021) ("[T]o the extent evidence of the collateral crimes was not admissible, we agree with the State that any error would be harmless in light of [Defendant's] confession because, based on the record before us, there is no reasonable possibility that the error contributed to the conviction.").

Estache raises three double jeopardy challenges. Double jeopardy claims present pure questions of law and are therefore reviewed de novo. McKinney v. State, 66 So. 3d 852, 853 (Fla. 2011). "[S]eparate convictions for different offenses arising from a single act are only permissible where each separate offense contains an element that the other lacks." Olivard v. State, 831 So. 2d 823, 824 (Fla. 4th DCA 2002). When separate convictions violate double jeopardy, the remedy is to vacate the conviction for the lesser offense and affirm the conviction for the greater one. Id. Estache challenges the following three convictions as violations of double jeopardy.

### 1. Burglary with Assault (Count 11) and Attempted Home Invasion Robbery (Count 12)

Estache argues his conviction for both burglary with assault and attempted home invasion robbery violates double jeopardy. We agree. "The crime of burglary of a dwelling with an assault or battery is subsumed by the offense of home invasion robbery." Mendez v. State, 798 So. 2d 749, 750 (Fla. 5th DCA 2001); see also Braggs v. State, 789 So. 2d 1151, 1153 (Fla. 3d DCA 2001) ("As the state correctly concedes, the conviction for . . . home

8

invasion robbery, 'should be vacated as it is subsumed by the greater offense of burglary with an assault.'" (quoting Smith v. State, 741 So. 2d 579, 579 (Fla. 3d DCA 1999))).  We therefore remand for the trial court to vacate the conviction for the lesser offense of attempted home invasion robbery.  We affirm the conviction for burglary with assault.

**2. Attempted Home Invasion Robbery (Count 12) and Attempted Armed Robbery (Count 13)**

Estache argues that his conviction for attempted armed robbery must be vacated because it is completely subsumed within the crime of attempted home invasion robbery.  As set forth above, the lesser offense of attempted home invasion robbery should be vacated.  Consequently, this argument is moot.

**3. Unlawful Possession of a Firearm (Count 15)**

Because Counts 7-13 were enhanced upon the jury's finding that Estache used or carried a firearm, Estache argues that his conviction for unlawful possession of a firearm (Count 15) violates double jeopardy.  See Mendoza v. State, 941 So. 2d 523, 525 (Fla. 3d DCA 2006) ("[W]hen a defendant is convicted of a felony in which the conviction is enhanced due to use of a firearm, the double jeopardy clause bars both a conviction and sentence for the crime of possession of a firearm during the

9

commission of a felony."). The State agrees. We therefore remand for the trial court to vacate the conviction for unlawful possession of a firearm.

## III.    CONCLUSION

We reverse and remand for the trial court to vacate the convictions for attempted home invasion robbery  (count 12) and unlawful possession of a firearm (count 15).  We affirm all other issues on appeal.

Affirmed, in part, and reversed and remanded, in part.